# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

KIRK HOMOKY,                              )
                                         )
      Plaintiff,                    )
                                         )
v.                                       )     CAUSE NO. 2:12-CV-491-TLS
                                         )
JEREMY OGDEN, et al.,                    )
                                         )
      Defendants.                   )

## OPINION AND ORDER

The Plaintiff, Kirk Homoky, is a City of Hobart police officer. In a Complaint filed in this Court on November 26, 2012, the Plaintiff sued the City of Hobart Board of Public Works and Safety (the Board), the City of Hobart police officers Jeremy Ogden and Garrett Cisezweski, and Chief of the City of Hobart Police Department, Jeffrey White, claiming that they had deprived him of a property interest without due process of law in violation of the Fourteenth Amendment, and violated his First Amendment rights. The Complaint also asked for injunctive relief against the Board. This matter is before the Court on the Defendants['] Motion for Summary Judgment [ECF No. 49], filed by Defendants Ogden, Cisezweski, and White, and the related briefs and exhibits. The Defendants have also moved to strike portions of the Plaintiff's exhibits and object to the Plaintiff's statement of material facts [ECF No. 78].

The Board filed its own motion for summary judgment, which the Court addresses in a separate Opinion and Order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen–El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

As the Court addresses the legal issues presented by the Defendants' Motion for Summary Judgment and analyzes the facts under the governing procedural and substantive law, the Court will consider the admissibility of the Plaintiff's statements, determine whether there are any irrelevant, inadmissible, conclusory, or speculative assertions that should be disregarded, and deal with them accordingly. To the extent that any of the Plaintiff's statements would be inadmissible if he were to offer them at trial, the Court will not consider them. Where exhibits do

not go to facts that are outcome determinative under the applicable law, the Court will likewise ignore them. Additionally, the Court will operate under the principle that "it is simply not true . . . that if a litigant presents an overload of irrelevant or nonprobative facts, somehow the irrelevancies will add up to relevant evidence." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Consequently, there is no need to strike any part of the Plaintiff's Affidavit or his exhibits, and the Court will deny the Defendants' Motion to Strike.

## STATEMENT OF FACTS

Jeffrey White, as Chief of the Hobart Police Department, initiated an internal investigation into allegations that the Plaintiff engaged in improper and unethical conduct in his position as a police officer. White assigned Jeremy Ogden to conduct the internal investigation into the various complaints of wrongdoing and to prepare a report of his findings. Garrett Cisezweski also participated in the investigation. In an October 19, 2012, letter signed by Deputy Chief Vance Thompson the Plaintiff was informed: "Your conduct is the focus of an internal investigation ordered by the Chief of Police. In accordance with Hobart Police Department Rules, Regulations and General Orders, as well as the Garrity Rule, you are hereby ordered to cooperate fully and truthfully with investigators." (10-19-12 Letter, ECF No. 50-2 at 133 (emphasis in original).) The Plaintiff acknowledged his receipt and understanding of the order, as well as his rights.

Ogden conducted numerous interviews during the investigation, including interviews with the Plaintiff. Ogden informed the Plaintiff that he was going to be ordered to take a voice stress test (VST). A letter dated November 13 advised the Plaintiff that he was to report to the

Porter County Sheriff's Department for a voice stress analysis interview on November 19 as part

of the ongoing internal investigation. (11-13-12 Letter, ECF No. 50-2 at 134.) The letter

reminded the Plaintiff that he had been afforded the protections of the Garrity Rule, and that the

investigation was at the administrative level and was not a criminal investigation. On the date of

the test, Ogden and Cisezweski were present at the Porter County Sheriff's Department. Sergeant

Tim Manteuffel from the Porter County Sheriff's Department was assigned to administer the test.

Before the test was conducted, Detective Manteuffel presented the Plaintiff with a Truth

Verification Release Form, which provided:

> I, _____, do hereby voluntarily, without
> duress, coercion, promise, reward or immunity, submit to examination by the
> voice stress analysis truth verification technique and release, absolve and forever
> hold harmless the PORTER COUNTY SHERIFF'S DEPARTMENT and it's [sic]
> officers, agents, or anyone acting in it's [sic] behalf, from all claims, demands, or
> other damages from any matter, act, or thing arising out of the examination. I
> understand that this examination may be video and/or audio taped and I release
> into the possession of the PORTER COUNTY SHERIFF'S DEPARTMENT all
> materials, recordings and all other documents for the purpose of testimony and/or
> training.

(ECF No. 50-3 at 186.) The Form contained signature and date lines.

The Plaintiff said he needed to talk to his attorney, and then called someone on his cell

phone. After reading the form to the person on the phone, the Plaintiff stated that he was not

going to sign the form because he was not there voluntarily. Sergeant Manteuffel asked if the

Defendant would sign the form if he changed the word voluntary to involuntary on the Form. The

Plaintiff spoke to the person on the phone and stated that he still would not sign because he was

not there voluntarily and was not promising that he would not sue. The Plaintiff disputes that he

was given the option to cross out the word voluntary. Sergeant Eric Jones became involved as the

situation developed. Jones told the Plaintiff that the Porter County Sheriff's Department policy dictated that the test could not be administered without a signed form. According to the Plaintiff, Cisezweski told the Plaintiff that if he did not sign the form and take the test, he would report the Plaintiff's refusal to the Chief. The Plaintiff did not sign the form, and he left the Sheriff's Department without taking the test. Sergeant Manteuffel described these events in a written report.

In a letter drafted on this same date, November 19, Chief White placed the Plaintiff on unpaid administrative leave. The subject line advised that the letter concerned "Unpaid Administrative Leave — Pending Termination of Employment." Chief White charged that the Plaintiff had failed to follow a lawful order to submit to a voice stress analysis as instructed by Deputy Chief Thompson in an order dated November 13, 2012. White stated "you have failed to cooperate truthfully with an internal investigation ordered by the Chief of Police regarding your conduct." (11-19-12 Letter, ECF No. 50-3 at 63.) Chief White explained that the failure to obey a lawful order was a violation of Hobart Police Department rules and regulations, specifically the section against insubordination. Chief White informed the Plaintiff that "[e]ffective immediately you are relieved of your duties as a Hobart police officer and placed on unpaid administrative leave. It is my intention to seek termination of your employment before the Hobart Board of Public Works & Safety." (*Id.*) The Plaintiff was ordered to relinquish his department property, and told that a lieutenant would keep him informed as the process moved forward.

The next afternoon, Chief White served the Plaintiff with written notice of the charges. The notice indicated that the Plaintiff had been advised of Chief White's intention to seek the Plaintiff's dismissal from employment with the Hobart Police Department. Chief White indicated

that he would be presenting formal charges to the Board on Wednesday, November 21, 2012, and advised the Plaintiff of his statutory right under Indiana Code § 36-8-3-3 to request a hearing from the Board, which had to be received "within five days from your notice of intent to dismiss (termination of employment)." (11-20-12 Advise of Rights Letter, ECF No. 61-5 at 3.) Chief White advised the Plaintiff that, due to the impending Thanksgiving holiday, his written request for a hearing had to be received by the Board no later than Wednesday, November 28, 2012.

On this same date, Chief White served a letter on the members of the Board, with a copy to the Plaintiff. He stated, "It is my intention to seek termination of employment of Officer Kirk A. Homoky, without delay, for the following violations of the rules and regulations of the Hobart Police Department and Indiana law." (11-20-12 Statement of Charges, ECF No. 61-5 at 2.) The Statement of Charges went on to specify two counts of misconduct. In the closing paragraph, Chief White wrote: "I would ask the Board to consider these charges and render a decision to affirm the termination of Officer Kirk A. Homoky's employment with the Hobart Police Department at the earliest opportunity." (*Id.*) The Chief confirmed that he had sent a copy of the letter to the Plaintiff and to his counsel, Christopher C. Cooper.

Attorney Cooper, believing that the letters and notices from the City of Hobart meant that a hearing to decide whether to terminate the Plaintiff's employment would occur the next day, November 21, sent the Board a document to complain about the lack of reasonable notice and due process. Attorney Cooper wrote that the notice informed him "that tomorrow, in perhaps less than 15 to 20 hours, there will be meeting before the Hobart Board of Public Works & Safety, and there and then, an effort to terminate my client, Kirk Homoky, as a Hobart police officer." (11-20-12 Response, ECF No. 62-3.) Attorney Cooper asked the Board to adhere to Indiana Code

§ 36-8-3-4 & 4.1, and demanded an evidentiary due process hearing.

The next day, the Board conducted its regular meeting. According to the minutes of the meeting, the Board heard Chief White's review of the charges against the Plaintiff and his request for termination of employment. Chief White told the Board that an internal investigation was still ongoing. The City Attorney advised that his review of the law and the documents presented by Chief White led him to conclude that there was no basis for the administrative leave to be unpaid where the officer was awaiting further proceedings on threatened disciplinary action. The City Attorney recommended that the Board confirm the administrative leave, but that it be with pay until further notice. He noted the filings from Attorney Cooper, including his appeal and hearing demand pursuant to Indiana Code § 36-8-3-4 & 4.1. The Board then scheduled a hearing for City of Hobart v. Kirk Homoky for January 23, 2013, confirmed the administrative leave with pay, and directed and authorized the City Attorney to provide the Plaintiff and his attorney with notice of the scheduled hearing and advise them of the Plaintiff's rights. (11-21-12 Minutes, ECF No. 62-4.) The City Attorney then provided Attorney Cooper with notice of the hearing date and time, explained the charges and the Plaintiff's rights, and informed him that the Board had changed the terms of the Plaintiff's leave to administrative leave with pay.

On November 26, 2012, the Plaintiff initiated litigation against the Board, Chief White, and the officers conducting the internal investigation. One of the counts asserted in the Complaint was for injunctive relief to obtain a hearing no later than December 19, 2012, as was the Plaintiff's statutory right. Four days later, on November 30, the Plaintiff, through Attorney Cooper, informed the City Attorney that he objected to scheduling the hearing on January 23,

2013, citing the requirement in Indiana Code § 34-8-3-4 (c), which requires that a hearing be held within 30 days of the request. On December 3, the City Attorney responded in writing to Attorney Cooper, stating that the evidentiary hearing had been rescheduled to December 13, 2012, per his request.

At a December 5 regular meeting of the Board, Chief White, through counsel, filed a Motion to Dismiss the charges against the Plaintiff that were pending before the Board. The Motion stated:

> That an internal investigation which may involve Officer Homoky is nearing completion, and that given statutory time constraints, and the police department's efforts will be better directed to the ongoing investigation. It would be better for all parties involved for these charges to be dismissed. Therefore, the respondent requests that the current charges against Officer Homoky be dismissed.

(12-5-12 Motion to Dismiss, ECF No. 42-9.) The minutes of the Board meeting reflect the following:

> Attorney Whitten [the Police Department Attorney] filed a written Motion to Dismiss on this case to allow for the police department efforts to be directed toward the completion of an internal investigation regarding this officer. Attorney Whitten stated the officer has been on paid leave and will be going back to work once the current case is dismissed. Attorney DeBonis [the City Attorney] noted that the Chief has the authority and responsibility of assigning duties of each officer and will be assigning duties for Officer Homoky.

(12-5-12 Minutes, ECF No. 62-2 at 2.) The Board granted the Motion to dismiss the charges against the Plaintiff and struck the hearing date of December 12, 2012, because it was no longer necessary.

The Hobart Police Department's internal investigation concerning the Plaintiff continued. Eventually, criminal charges were brought against the Plaintiff in state court.

## ANALYSIS

### A.     First Amendment Interference and Retaliation

In Count I of the Complaint, the Plaintiff alleges that Defendants White and Cisezweski interfered with his First Amendment rights by taking adverse employment action against him "because Plaintiff asserted\expressed that his submission to a Voice Stress was not voluntary." (Compl. ¶ 36.) In Count II, the Plaintiff asserts the same facts against these same Defendants, and alleges that the employment action constituted unlawful retaliation. Because the Plaintiff is claiming, in both Counts, that the Defendants took adverse action against him by initiating insubordination charges in response to his speech concerning the VST, the Court will analyze the Counts as a single First Amendment claim for retaliation in the public employment context.

To make out a prima facie case of First Amendment retaliation, a public employee must present evidence that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

Government employees do not lose the right to comment as citizens on matters of public concern as an incidence of their employment. *City of San Diego v. Roe*, 543 U.S. 77 (2004)*; Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002) (describing constitutionally protected government employee speech). But if a government employee did not speak as a citizen to address a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This determination "depends upon 'the content, form, and context of [the speech] as revealed by

the whole record.'" *Gustafson*, 290 F.3d at 907 (brackets in original) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). "The 'public concern' element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Id.*

It would be disingenuous to construe the Plaintiff's statements—that he would not submit to a voice stress test unless he could first indicate that it was not voluntary—as deriving from anything other than a purely personal interest. The Plaintiff was not attempting to "bring to light actual or potential wrongdoing or breach of public trust." *Connick*, 461 U.S. at 149. His statements did not involve matters of police protection, public safety, or government malfeasance. The Plaintiff expressed his personal objection to signing a statement that would indicate that he voluntarily took the test when, in reality, he had been ordered to take the test, and to relinquishing his right to initiate litigation related to the test. As framed in his Complaint, the Plaintiff did not want to sign the form and thereby waive his right to bring legal action in connection with the VST. (Compl. ¶ 16.) The Plaintiff did not purport to speak on behalf of anyone but himself.

Additionally, the form of his statements do not indicate that the matter was one of public concern. The only individuals the Plaintiff complained to were those who were present as part of the investigation. As such, the speech did nothing to "promot[e] the public's interest in receiving the well-informed views of government employees engaging in civic discussion." *Garcetti*, 547 U.S. at 419.

The context of the speech was that the Deputy Chief ordered the Plaintiff to take the test as part of an ongoing internal investigation into allegations that had been lodged against the

Plaintiff. Within this context, there was no suggestion of public motivation when the Plaintiff objected. This was a "personal grievance of interest only to the [Plaintiff]." *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003); *see also Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir. 1994) (emphasizing that the appropriate inquiry takes into account "the *point* of the speech in question" in addition to its content: "was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" *Smith*, 28 F.3d at 651 (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir. 1985)).

The Plaintiff's argument regarding the nature of his speech, in its entirety, is as follows:

> Plaintiff's presence at the VST site was pursuant to having been ordered by the Chief of Police. When he arrived, he had a substantive due process right to voice that he was onsite not of his own volition and that he sought to cross-out the word voluntary and replace it with involuntary. That is a public issue, not personal. It involves a substantive right.

(Pl.'s Resp. 16, ECF No. 61-1.) According to the Plaintiff, because the speech concerned what he believed to be a substantive due process right, it became a matter of public concern. That is not the test, as outlined above. While the Plaintiff's speech in its broadest sense may have touched on a matter of public concern in regard to waivers, the undisputed facts show that at the time the Plaintiff engaged in the speech in question he was merely seeking to protect his own welfare and addressing issues concerning his personal interests. *See Bivens v. Trent*, 591 F.3d 555, 561 (7th Cir. 2010) (stating that "if the speech concerns a subject of public interest, but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern") (internal quotation marks omitted) (quoting *Marshall v. Porter Cnty Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994)); *Hartman. Bd. of Trs. of Comty. Coll.*, 4 F.3d 465,

11

471 (7th Cir. 1993) (noting that a showing of public concern does not turn on the general subject matter of the employee's speech and that a "court is not required to assume that because an employer's action *could* be objected to as an issue of public concern, the employee must have objected to it on that basis"). Because the Plaintiff spoke, "not as a citizen upon matters of public concern but instead as an employee upon matters only of personal interest . . . a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a public agency." *Connick*, 461 U.S. at 147.

In consideration of the content and form of the Plaintiff's remarks, along with the underlying circumstances, including his reasons for speaking, the Court finds that the Plaintiff's speech was not constitutionally protected. Rather, the Plaintiff is improperly attempting to "constitutionalize the employee grievance." *Id.* at 154. Accordingly, Defendants White and Cisezewski are entitled to judgment as a matter of law on the Plaintiff's First Amendment claims set forth in Counts I and II of the Complaint.

**B.     Due Process Claims**

Count III of the Plaintiff's Complaint is that Defendant White deprived the Plaintiff of a property interest without due process of law.[1] Specifically, the Plaintiff alleges that White violated his due process rights by suspending him without pay and without first affording him due process, and attempting to terminate his employment without sufficient time to be heard. In Count IV, the Plaintiff repeats these due process allegations against White and alleges that

---

[1] Count III also named Defendant City of Hobart Board of Public Works and Safety. The Board filed a separate motion for summary judgment, which is addressed in a separate Opinion and Order.

Defendants Ogden and Cisezweski violated his due process rights by repeatedly pressuring him to waive his Fifth Amendment right against self-incrimination. He alleges that, although they described their investigation as administrative, it was a "vindictive and personal 'fishing expedition' to try to cause a criminal investigation." (Compl. ¶ 59.) Finally, the Plaintiff alleges that Ciseweski denied the Plaintiff an opportunity to submit to a VST.

### 1.     *Voice Stress Test*

The Plaintiff attempts to fashion several claims out of the circumstances surrounding his request to document that his submission to the VST that his employer had ordered him to take was involuntary. He contends that the manner in which he was ordered to submit to a VST, by way of *Garrity* assurances, "is of great significance in determining whether or not Defendant violated [his] 14th Amendment due process rights (the source of which is IC 36-8-3-4). Plaintiff alleges that Defendants attempted to cause him to waive his Fifth Amendment right to remain silent." (Pl.'s Resp. 6, ECF No. 61-1.) The Plaintiff believes that, despite receiving *Garrity* assurances, Defendants Ciseweski, Ogden, and White were intending to charge him criminally based on his responses. He points to the fact that Ogden in fact swore out affidavits to initiate criminal charges, and that Ogden had reasons to personally dislike the Plaintiff.

"The first inquiry in any [§] 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." *Reichenberger v. Pritchard*, 660 F.2d 280, 284–85 (7th Cir. 1981). "In § 1983 cases, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *Padula v.*

*Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (internal quotation marks omitted). In his submission to this Court, the Plaintiff invokes the Fifth Amendment, which has been made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, (1964), and requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). In *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), the Supreme Court held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."

Under *Garrity*, the Plaintiff could only be compelled to respond to questions about the performance of his duties if his answers were not then used against him in a subsequent criminal prosecution. The Plaintiff does not dispute that these assurances were provided, but argues that the Defendants intended to use his answers against him nevertheless. The "subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact." *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989)). For summary judgment, simply "saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates

a genuine issue of material fact." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010).[2] But regardless of the Defendants' intentions (or the Plaintiff's speculation about the Defendants' intentions), the Plaintiff never actually submitted to the VST, did not make any statements, and did not incriminate himself. The Plaintiff cannot identify a deprivation of his Fifth Amendment rights brought about by the Defendants' request that he submit to a VST. *See, e.g.,Chavez v. Martinez*, 538 U.S. 760, 771 (2003) ("Rules designed to safeguard a constitutional right do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person."); *Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 339 (7th Cir. 2010) (The Fifth Amendment "privilege against self-incrimination . . . concerns the use of compelled statements in criminal prosecutions.").

The Plaintiff appears to be invoking the Fifth Amendment as a potential explanation for refusing to submit to the VST. However, the designated evidence supports the conclusion that any statements the Plaintiff provided during a VST would have been for purposes of the internal investigation only. Accordingly, there was no Fifth Amendment privilege to assert. Despite being offered *Garrity* assurances, the Plaintiff refused to answer questions for the VST. This refusal prompted administrative charges. The Court understands the Plaintiff to be taking issue with the Defendant's characterization of the Plaintiff's actions as a refusal, which is what led to the insubordination charges; the Plaintiff maintains that Ciseweski and Ogden "suborned the false charge" of insubordination because they were aware that he did not refuse to take the test, but

---

[2] The Plaintiff cannot use the fact that criminal charges were brought against him as proof of Ogden's intentions when the test was ordered. The criminal charges were brought after the intervening event of the Plaintiff's refusal to fully cooperate in the internal investigation.

only refused to agree that it was voluntary. (Pl.'s Resp. 10.) The Plaintiff submits that he actually agreed to take the test, as long as the word "voluntary" was crossed out, but that he was not permitted to cross out the word.

Even if there is a genuine dispute whether the Plaintiff agreed to take the test if the word "voluntary" was crossed out, or whether he declined even after being provided that option, it would make no difference to the outcome of this litigation. The charges lodged against the Plaintiff were that he failed to follow a lawful order to submit to a voice stress analysis as instructed by Deputy Chief Thompson, and failed to cooperate truthfully with an internal investigation ordered by the Chief of Police. Refusing to submit to the test unless "voluntary" was stricken from the form could reasonably be viewed as conduct falling within these charges. The Plaintiff has not established that he had any right to clarify that he was involuntarily taking the test, or to avoid signing the release form—especially if he also expected his involuntary compliance to be considered full cooperation with the investigation. He could not demand to have it both ways. If any of the Defendants' representations about what occurred at the Porter County Sheriff's Department in relation to the VST are inaccurate, the Plaintiff has not explained how their actions deprived him of constitutionally guaranteed rights. The Plaintiff did not have a Fourteenth Amendment right to avoid charges being brought against him. *Cf. Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("there is no such thing as a constitutional right not to be prosecuted without probable cause"). As discussed below, he had a constitutional guarantee to procedural due process in the event his employer pursued charges that could impact his continued employment.

2.      *White's Suspension*

The Plaintiff asserts that White violated his rights when he suspended him without pay. According to Indiana Statute, "[b]efore a member of a police or fire department may be suspended in excess of five (5) days without pay, demoted, or dismissed, the safety board shall offer the member an opportunity for a hearing." Ind. Code § 36-8-3-4(c). White suspended the Plaintiff on November 19. The Plaintiff argues that White's letter imposed a suspension for an indefinite period of time. Although White's letter was unclear regarding the duration of the suspension and could have been interpreted as the Plaintiff asserts, the argument ignores what transpired next. On November 21, just two days later, the unpaid status of the suspension was changed to render the suspension a paid one. Accordingly, the suspension was in unpaid status for less than five days. If White had indeed imposed a suspension for an indefinite period of time, which the Plaintiff notes he was not authorized by Indiana statute to impose, then his actions were random and unauthorized. *See Germano v. Winnebago Cnty.*, 403 F.3d 926, 929 (7th Cir. 2005) (An action taken in violation of state law is unauthorized.). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir.1996). There is no requirement that a plaintiff exhaust state remedies, but "this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003). Here,

the Plaintiff availed himself of the state's procedural protections. He objected to the suspension, and it was changed to comply with the governing statute. He requested a hearing related to further disciplinary action, and it was granted. The issue became moot, and a hearing unncessary, when the charges connected to the suspension were dismissed. As the Supreme Court has explained, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

The Plaintiff maintains that White's actions led the Plaintiff to believe that he was terminated from his employment instead of merely suspended. In light of the evidence of record, the Plaintiff's subjective—and mistaken—beliefs concerning the meaning of White's actions are not dispositive. "In a procedural due process claim, it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law*—without adequate procedures." *Daniels v. Williams*, 474 U.S. 327, 339 (1986) (Stevens, J., concurring) (emphasis in original)). None of the designated evidence suggests that the Plaintiff was required to answer for the 2012 insubordination charges without first having been offered all the procedural protections set forth in Indiana statute.

Although he was not suspended without pay or terminated from employment, the Plaintiff maintains that being relegated to garage duty after the dismissal of the insubordination charges was a demotion in substance. According to the Plaintiff, for a period of more than two months he was unable to participate in overtime or on-duty employment known as "grants," and was no longer eligible to work at Wal-Mart during the Black Friday retail period. The Plaintiff has not established that he had a protected property interest in performing specific assignments or duties.

*See, e.g., Ulichny v. Merton Cmty. Sch. Dist.*, 93 F. Supp. 2d 1101, 1030 (E.D. Wis. 2000) ("a public employee has no property interest in a particular assignment or job duty, as opposed to his or her employment *per se*"). Nor has he established that the side jobs, overtime pay, or grants were included in his protected property interest. For example, Indiana Code § 36-8-1-11 defines salary, for purposes of all of Article 8, including discipline of public safety officers, as excluding "remuneration or allowances for fringe benefits, incentive pay, holiday pay, insurance, clothing, automobiles, firearms, education, overtime, or compensatory time off." The indirect economic effect caused by the loss of seasonal retail employment outside the Department did not trigger the protections of due process. *See Luellen v. City of E. Chi.*, 350 F.3d 604, 614 (7th Cir. 2003) (on-call pay was not protected by statute and was not integral to the plaintiff's position with fire department such that loss of this aspect of pay could be deemed a loss of his position); *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (suspended teacher's loss of opportunity to earn additional income from coaching positions was not the "sort of deprivation that triggers the protection of federal due process").

## C.     Abuse of Process

In response to the Motion for Summary Judgment, the Plaintiff submits that he "dismisses his Abuse of Process Claim, Count V." (Pl.'s Resp. 21, ECF No. 61-1.)

## CONCLUSION

For the reasons stated above, the Defendants['] Motion for Summary Judgment [ECF No. 49] is GRANTED, and the Motion to Strike [ECF No. 78] is DENIED. The Clerk will enter

judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on November 24, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION